# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY AMARAL, JOE AMARAL and DANNY AMARAL,<br><br>                      Plaintiffs,<br><br>         v.<br><br>WACHOVIA MORTGAGE CORPORATION, a North Carolina Corporation; CARRINGTON MORTGAGE SERVICES, LLC; and DOES 1-50 inclusive,<br><br>                      Defendants. | 09-CV-00937-OWW-GWA<br><br>MEMORANDUM DECISION AND ORDER RE: (1) DEFENDANT CARRINGTON'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT; (2) DEFENDANT WACHOVIA'S MOTION TO DISMISS; AND (3) DEFENDANT WACHOVIA'S MOTION TO STRIKE |

## I. INTRODUCTION

Before the court is a motion to dismiss or, in the alternative, a motion for a more definite statement filed by Defendant Carrington Mortgage Corporation ("Carrington"), and a motion to dismiss and a motion to strike filed by Defendant Wachovia Mortgage, FSB ("Wachovia") erroneously sued as Wachovia Mortgage Corporation. The motions are directed at the claims asserted by Plaintiffs Mary Amaral, Joe Amaral, and Danny Amaral ("Plaintiffs") in their removed complaint (Doc. 24-2). The following background facts are taken from the complaint and other documents on file in this case.

## II. BACKGROUND

### A. General Background

This is a mortgage fraud case concerning Plaintiffs' residence located in Lemoore, California. Initially, Plaintiffs obtained two

loans from Freemont & Loan ("Freemont"), one for $460,000 (the "First Loan") and one for $115,000 (the "Second Loan"). Around January 2008, Plaintiffs approached Wachovia to obtain a third loan, i.e., a refinance loan, to pay off both their First and Second Loan. (Doc. 24-2 at 2-3.)

On or about April 1, 2008, Carrington took over "servicing" of the First Loan allegedly without notice to Plaintiffs. On or about April 30, 2008, Wachovia purportedly wired $594,806.16 to Freemont to pay off both loans. On May 13, 2008, however, Carrington sent Plaintiffs a Notice of Intent to Foreclose on the First Loan. This notice stated that the monthly loan payments due on or after March 1, 2008, had not been received. Starting in June 2008, Plaintiffs made monthly payments to Wachovia on the refinance loan. Starting in December 2008, Wachovia refused to accept Plaintiffs' payments. (*Id.* at 3-4.)

**B.    Procedural History And Plaintiffs' Complaint**

On April 21, 2009, Plaintiffs filed a complaint in Kings County Superior Court. In May 2009, Defendant Carrington filed a notice of removal purporting to remove, with Wachovia's consent, Plaintiffs' state case to federal court. Carrington, however, attached the wrong complaint to its notice of removal – the attached complaint was filed by "Gerald Anudokem" in the Northern District of California. This irregularity was pointed out to Carrington in an order dated September 17, 2009. (Doc. 23.) On October 1, 2009, Carrington filed an amended notice of removal (to which no party objected) and attached the correct complaint.

Plaintiffs' complaint contains causes of action for: (1) a violation of the Real Estate Settlement Procedures Act of 1974, 12

U.S.C. § 2601 et seq. ("RESPA"); (2) a violation of § 2937 of the California Civil Code; (3) declaratory relief; (4) fraud; and (5) conversion. The RESPA, § 2937, and declaratory relief claims are asserted against Carrington. The fraud and conversion claims are asserted against Wachovia.

Federal question jurisdiction, which exists over the RESPA claim, is the asserted basis for subject matter jurisdiction. Supplemental jurisdiction is asserted as to the state law claims.

C. **The Motions**

Carrington moves to dismiss Plaintiffs' RESPA, § 2937, and declaratory relief claims. Alternatively, Carrington moves for a more definite statement of these claims. Wachovia moves to dismiss the fraud and conversion claims, and also moves to strike Plaintiffs' request for punitive damages. With respect to the fraud claim, Wachovia further contends that Plaintiffs have failed to comply with Rule 9(b)'s pleading requirements.

### III. STANDARDS OF DECISION

A. **Motion To Dismiss**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause

**3**

of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving

party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

**B.    Motion For A More Definite Statement**

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Under Rule 12(e), "[a] party may move for a more definite statement of a pleading" when it is "so vague or ambiguous that the party cannot reasonably prepare a response."

A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague that the defendant cannot begin to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981). The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her.").

**C.  Motion To Strike**

Under Rule 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005).

**D.  Rule 9(b)**

In terms of factual sufficiency, Rule 9(b), when it applies, imposes an elevated pleading standard. Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  The "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations" must be specified. *Id.* (internal quotation marks omitted).  The "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  A plaintiff alleging

fraud "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis removed).

## IV. ANALYSIS

**A. Carrington's Motion**

    **1. RESPA Claim**

As to the RESPA claim, Plaintiffs' complaint alleges:

23. The transaction was a 'federally related mortgage loan' as that term is defined in the Real Estate Settlement and Procedures Act ('RESPA'), 12 U.S.C. § 2602(1).

24. Carrington is a 'servicer' as defined in 12 U.S.C. § 2605(i)(2),(3).

25. The notification provision in section 2605(c)(1) states: 'Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.' Section 2605(c)(2)(A) states that the notice required 'shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).'

26. Plaintiffs never received a notice regarding the purported assignment, sale or transfer of the servicing of the loan to Carrington.

27. Further, if the Notice of Default is correct and Carrington became the 'transferee servicer' as of March 1, 2008, Carrington failed to provide notice of the transfer of servicing within 15 days after the effective date of transfer.

28. Pursuant to RESPA, the above violations committed by Carrington subject defendants to actual damages to the plaintiffs and any additional damages allowed by the Court.

(Doc. 24-2 at 5.)

7

In enacting RESPA, Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601(a). The RESPA provision at issue in Plaintiffs' complaint, § 2605(c), deals with a loan servicer's obligation to give notice to a borrower when a federally related mortgage loan is assigned, sold or transferred to that servicer.

Section 2605(c) reads, in pertinent part, as follows:

(1) Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

. . . .

(2)(A) Except as provided in subparagraphs (B) and (C), the notice . . . shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(3) Any notice required under paragraph 1 [above] shall include information described in subsection (b)(3) of this section [i.e., § 2605(b)(3)].

12 U.S.C. § 2605(c)(1)-(3).

In terms of civil liability, "[w]hoever fails to comply" with § 2605(c), or any provision of § 2605, is liable to the borrower for "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." § 2605(f)(1)(A)-(B).

**8**

Carrington advances two arguments as to why Plaintiffs' RESPA claim under § 2605(c) is insufficiently pled. First, citing *Wanger v. EMC Mortgage Corp.*, 103 Cal. App. 4th 1125 (2002), Carrington argues that Plaintiffs' allegation that they never "received" a notice from Carrington when it became the loan servicer is insufficient to state a claim under § 2605(c) because this section only requires Carrington to "mail" the requisite notice to the borrower; it does not require Carrington to ensure the notice is actually "received" by the borrower or physically placed in the borrower's hands. *See also Rodriguez v. Countrywide Homes*, __ F. Supp. __, 2009 WL 3792308, at *5-6 (E.D. Cal. 2009). Second, Carrington contends the RESPA claim fails because Plaintiffs have not alleged that they suffered "actual damages" as a result of the statutory violation nor, more importantly, any facts suggesting that they suffered actual damages.

In opposition, Plaintiffs offer to amend their complaint to allege, on information and belief, that the requisite RESPA notice "was not sent" by Carrington. While this amendment would address Carrington's first argument, it would not cure the deficiency in Plaintiffs' complaint with respect to actual damages.

As Carrington correctly notes, there are no allegations in the complaint suggesting that Plaintiffs suffered actual damages as a result of Carrington's alleged violation of § 2605(c). Absent factual allegations suggesting that Plaintiffs suffered actual damages, Plaintiffs' RESPA claim is insufficiently pled and subject to dismissal. *Molina v. Washington Mutual Bank,* No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (concluding that a RESPA claim was infirm because the plaintiffs "failed to

sufficiently plead pecuniary loss"); *Lemieux v. Litton Loan Servicing, LP*, No. 2:09-cv-02816-JAM-EFB, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) ("Plaintiffs have not pled facts showing they suffered actual damages. Their failure to do so defeats their RESPA claim."); *Garcia v. Wachovia Mortgage Corp.*, __ F. Supp. 2d __, 2009 WL 3837621, at *10 (C.D. Cal. 2009) (dismissing RESPA claim because Plaintiff "failed to allege damages under Section 2605"). Although Plaintiffs have alleged that Carrington's RESPA violation "subjects defendant[] to actual damages" under the statute (Doc. 24-2 at 6), this allegation is insufficient. "Th[is] is not a factual allegation of damage to Plaintiff[s]; it is a conclusory statement of law." *Garcia*, 2009 WL 3837621 at *10.

The RESPA claim is DISMISSED WITH LEAVE TO AMEND.

### 2. Section 2937

The complaint asserts, perfunctorily, a "Violation of [California] Civil Code § 2937" against Carrington. The complaint alleges:

> 31. Defendant Carrington failed to give written notice to plaintiffs of the transfer of servicing of indebtedness on the First Loan.

> 32. Pursuant to Civil Code § 2937(g), plaintiffs are not liable to the holder of the note or any servicing agent for payments made to Freemont, nor are they liable for late charges.

(Doc. 24-2 at 6.) Carrington raises two arguments against this purported claim. First, without citing any authority, Carrington argues that § 2937 does not give rise to a private right of action; instead, a violation of the statute merely relieves the aggrieved borrower of certain monetary obligations such as late charges. *See* § 2937(g). Second, Carrington contends that even if § 2937 gives

rise to a private right of action, Plaintiffs' allegations are insufficient to state a claim because the statute only requires Carrington to "mail" the requisite notice to the borrower; it does not require Carrington to ensure the notice is actually received by the borrower or physically given to the borrower. According to Carrington, Plaintiffs must, at a minimum, allege that Carrington "failed to mail" the statutory notice.

Section 2937 reads, in pertinent part, as follows:

(a) The Legislature hereby finds and declares that borrowers or subsequent obligors have the right to know when a person holding a promissory note, bond, or other instrument transfers servicing of the indebtedness secured by a mortgage or deed of trust on real property containing one to four residential units located in this state. The Legislature also finds that notification to the borrower or subsequent obligor of the transfer may protect the borrower or subsequent obligor from fraudulent business practices and may ensure timely payments.

. . . .

(b) Any person transferring the servicing of indebtedness as provided in subdivision (a) to a different servicing agent and any person assuming from another responsibility for servicing the instrument evidencing indebtedness, shall give written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent.

. . . .

(e) The notices required by subdivision (b) shall be sent by first- class mail, postage prepaid, to the borrower's or subsequent obligor's address designated for loan payment billings, or if escrow is pending, as provided in the escrow, and shall contain each of the following:

(1) The name and address of the person to which the transfer of the servicing of the indebtedness is made.

(2) The date the transfer was or will be completed.

(3) The address where all payments pursuant to the

11

transfer are to be made.

> (f) Any person assuming from another responsibility for servicing the instrument evidencing indebtedness shall include in the notice required by subdivision (b) a statement of the due date of the next payment.

> (g) The borrower or subsequent obligor shall not be liable to the holder of the note, bond, or other instrument or to any servicing agent for payments made to the previous servicing agent or for late charges if these payments were made prior to the borrower or subsequent obligor receiving written notice of the transfer as provided by subdivision (e) and the payments were otherwise on time.

Cal. Civ. Code § 2937(a)-(b), (e)-(g).

As to Carrington's first argument, i.e., that § 2937 does not create a private right of action, *Faria v. San Jacinto Unified School District*, 50 Cal. App. 4th 1939, 1947 (1996) (internal citations and quotation marks omitted), explains the general rule:

> The general rule is that '[f]or every wrong there is a remedy.' (Civ. Code, § 3523.) In accordance with that principle, [t]he violation of a statute gives to any person within the statute's protection a right of action to recover damages caused by its violation. Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided; otherwise any appropriate common law remedy may be resorted to. A private right of action is an appropriate remedy when it is needed to assure the effectiveness of the provision . . . .

Carrington has not explained why the general rule stated in *Faria* – that a statutory violation gives any person within the statute's protection a right to recover damages caused by the violation – does not apply in this case. Nor has Carrington argued that § 2937(g) is a remedial provision which precludes any *further* remedy for a statutory violation (this argument would actually undermine Carrington's contention that § 2937 provides no private

12

right of action at all).[1]

Even assuming, however, that § 2937 may supply a private right of action, there is a problem with the complaint that precludes a conclusive resolution of Carrington's argument. It is impossible to discern, from the complaint, whether Plaintiffs are even asserting a private right of action under § 2937 or, instead, are using § 2937 solely as a defense. *Sutton v. Providence St. Joseph Md. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999) (recognizing that a statute may give the plaintiff a viable "defense" but not a "private right of action"); *see also Sanai v. Saltz*, 170 Cal. App. 4th 746, 775 n.21 (2009) (same). There is *no* indication in the complaint that Plaintiffs are requesting damages, declaratory relief, or some other affirmative remedy for the alleged violation of § 2937. The complaint merely states that, because of the statutory violation, "plaintiffs are not liable to holder of the note or to any servicing agent for payments made to Freemont, nor are they liable for late charges." (Doc. 24-2 at 6.) An allegation that Plaintiffs are "not liable" is not equivalent to, and falls short of, pleading an affirmative claim for relief.

Without knowing whether Plaintiffs are using § 2937 to obtain some affirmative remedy, whether Plaintiffs have a viable private right of action cannot be properly analyzed or conclusively determined at this time. Whether § 2937 provides a private right of action is not something which can be determined in the abstract.

---

[1] Under certain circumstances, § 2937(g) excuses the remission of payments and late charges to the new servicing agent if the payments have been made to the former payee.

13

*See Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009) ("The role of the courts is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies.") (internal quotation marks omitted); *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) ("It has long been settled that we have no authority to give opinions upon . . . abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before us") (internal quotation marks omitted).

Carrington's motion to dismiss on the grounds that § 2937 does not provide Plaintiffs with a private right of action is DENIED without prejudice to refiling. Carrington's motion for a more definite statement is, however, GRANTED. Because it is unclear whether Plaintiffs are asserting a private right of action under § 2937, Plaintiffs, if they wish to pursue such a claim, must amend the complaint to clarify whether they are requesting damages, declaratory relief, or some other affirmative remedy for the statutory violation.[2] Carrington's motion for a more definite statement of this claim is GRANTED WITH LEAVE TO AMEND.

As to Carrington's second argument in support of dismissal, Plaintiff has offered to amend the complaint to allege, on information and belief, that the requisite statutory notice under § 2937 "was not sent" by Carrington. This proposed amendment addresses Carrington's second argument and tracks the statutory text, which requires that notices "be sent by first-class mail." §

---

[2] If they are using the statute only defensively, then there should not be a separately pled "claim" or "cause of action" for a violation of § 2937 in any amended complaint.

2937(e).  At this juncture, however, whether Plaintiffs are even asserting a private right of action under § 2937, or are using the statute solely as a defense, is unclear.  Given the complaint's lack of clarity on this issue, Carrington's motion to dismiss for failure to state a "claim" is premature, as no affirmative "claim" presently appears in the complaint.  If Plaintiffs amend the complaint to affirmatively assert a private right of action (i.e., a claim) under § 2937, it can then be determined whether it is subject to dismissal for, among other reasons, insufficient factual allegations.

Carrington's motion to dismiss the § 2937 "claim" because it is insufficiently pled is DENIED without prejudice to refiling.

### 3.   Declaratory Relief

Plaintiffs assert a declaratory relief claim against Carrington.  The complaint describes a purported controversy between Carrington and Plaintiffs concerning a non-judicial foreclosure on Plaintiffs' property.

> 35.  An actual controversy has arisen and now exists between plaintiffs and Carrington concerning their respective rights and duties under the Deed of Trust, in that defendants allege that a default exists as stated in the Notice of Default, and that the defendants have the right to complete the non-judicial foreclosure pursuant to the Notice of Trustee's Sale, while plaintiffs allege that the Notice of Default is defective, and therefore defendants have no right to proceed with the non-judicial foreclosure pursuant to the Notice of Trustee's Sale.
>
> 36.  Plaintiffs desire a judicial determination of their rights and duties, and declarations as to whether: (a) plaintiffs are in default under the provisions of the Deed of Trust; (b) the Notice of Default and the Notice of Trustee's Sale are defective and invalid; and (c) defendants have the right to proceed with the non-judicial foreclosure pursuant to the Notice of Trustee's Sale.

(Doc. 24-2 at 7.)

Declaratory relief "operates prospectively, and not merely for

the redress of past wrongs." *Babb v. Superior Court*, 3 Cal. 3d 841, 848 (1971); *see also County of San Diego v. California*, 164 Cal. App. 4th 580, 607 (2008). A declaratory relief action "serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." *Babb*, 3 Cal. 3d at 848 (internal quotation marks omitted). As recently stated in *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009) (internal citations and quotation marks omitted):

> The purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation. Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation. One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.

The first two declarations which Plaintiffs request concern only *past* conduct, i.e., whether Plaintiffs are "in default under the provisions of the Deed of Trust" and whether "the Notice of Default and the Notice of Trustee's Sale are defective and invalid." A judicial declaration as to these matters would not, standing alone, serve the purposes of declaratory relief. However, the final declaration Plaintiffs request is whether Carrington has a "right to proceed with the non-judicial foreclosure pursuant to the Notice of Trustee's Sale." This requested declaration is prospective in nature – the non-judicial foreclosure has not yet occurred – and could conceivably prevent future litigation over a completed wrongful foreclosure, as well as guide the parties' future conduct.

Carrington argues that declaratory relief is not necessary

16

because "[i]f Carrington wants to foreclose on the subject home in the future, it need not rely on the validity of the previously recorded notice of default, it can issue a new notice of default." Incidentally, this argument underscores that there is an ongoing dispute between the parties over their rights and duties and reveals the potential utility of declaratory relief in guiding the parties' future conduct, i.e., Carrington may or may not need to issue a new notice of default if the old one is or is not defective.

Carrington's motion to dismiss the declaratory relief claim is GRANTED in part and DENIED in part. The motion is GRANTED to the extent the complaint requests independent declarations as to past conduct, i.e., whether Plaintiffs are "in default under the provisions of the Deed of Trust" and whether "the Notice of Default and the Notice of Trustee's Sale are defective and invalid." This portion of the declaratory relief claim is DISMISSED.[3] The motion is DENIED to the extent the complaint requests a declaration that Carrington has a "right to proceed with the non-judicial foreclosure pursuant to the Notice of Trustee's Sale."

B.  **Wachovia's Motion**

1.  **HOLA Preemption**

Wachovia, a federally chartered savings bank, moves to dismiss

---

[3] To the extent the first two requested declarations (i.e., whether Plaintiffs are in default and whether the default notice and trustee's sale notice were defective and invalid) are tied to and provide the basis for the third requested declaration (i.e., whether Carrington can proceed with the non-judicial foreclosure), a determination as to whether Plaintiffs are entitled to the third requested declaration will involve an analysis of the issues surrounding the first two with no need for separate declarations on all three matters.

the state law fraud and conversion claims on the grounds that these claims are preempted by the federal Home Owners Loan Act ("HOLA").[4] Numerous courts have found state law fraud and conversion claims preempted by HOLA. *See, e.g.*, *Lopez v. Wachovia Mortgage*, No. 2:09-CV-01510-JAM-DAD, 2009 WL 4505919, at *5 (E.D. Cal. Nov. 20, 2009); *Kelley v. Mortgage Electronic Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1054 (N.D. Cal. 2009); *Andrade v. Wachovia Mortgage*, *FSB*, No. 09 CV 0377 JM (WMc), 2009 WL 1111182, at *2 (S.D. Cal. Apr. 21, 2009).

"HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (internal quotation marks omitted). HOLA and its accompanying regulations represent a "radical and comprehensive response to the inadequacies of the existing state system, and [are] so pervasive as to leave no room for state regulatory control." *Silvas*, 514 F.3d at 1004 (internal quotation marks omitted). Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") wide authority to issue regulations governing thrifts. *Id.* at 1005. OTS promulgated a preemption regulation, 12 C.F.R. § 560.2, which the Ninth Circuit relies upon to determine whether state law is preempted. *Id.* at 1005-06.

---

[4] **Because Wachovia's status as a federal savings bank subject to HOLA is not challenged, judicial notice need not be taken of Wachovia's Certificate Of Corporate Existence (Doc. 30-2, Ex. E), a signed letter from the Office of Thrift Supervision (Doc. 30-2, Ex. F), and the Charter of Wachovia (Doc. 30-2, Ex. G), which is signed by the Secretary of the Office of Thrift Supervision.**

Section 560.2(a) states that "OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."  Section 560.2(b) then lists specific types of state laws which are preempted:

> (b) . . . [T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding: . . . .

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; . . . .

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

> (11) Disbursements and repayments; . . . .

12 C.F.R. § 560.2(b)(4), (9)-(11).  The OTS has outlined a proper analysis to employ when evaluating whether state law is preempted under the regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes,

**19**

**paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.**

*Silvas*, 514 F.3d at 1005 (quoting 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). The Ninth Circuit has adopted this analytical approach. *Id.* at 1006. In *Silvas*, the court stated:

> As outlined by OTS, the first step is to determine if UCL § 17200, *as applied*, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R. § 560.2. If it is, the preemption analysis ends.

*Id.* (emphasis added). Here, Plaintiffs' fraud and conversion claims, as applied, are a type of state law contemplated in § 560.2(b). These claims are preempted.

        a.   <u>Fraud Claim</u>

As to the fraud claim, Plaintiffs allege Wachovia "made material false representations to plaintiffs that their refinance loan was approved by Wachovia, that all loan documents had been processed, and that plaintiff had incurred an obligation to make monthly payments to Wachovia to repay the refinance loan." (Doc. 24-2 at 8.) This fraud claim concerns lending and revolves around the "processing, origination [and/or] servicing" of a mortgage. As applied, this fraud claim is a type of state law contemplated in § 560.2(b)(10) and is preempted.

Plaintiffs' fraud claim also alleges that "[t]here was no documents indicating the Wachovia loan had been processed or approved, or that plaintiffs had any obligation to pay any money to Wachovia." (Doc. 24-2 at 8.) This fraud allegation fits squarely within § 560.2(b)(10), and likely within § 560.2(b)(9), which deals with information in "credit-related documents," and § 560.2(b)(11), which deals with "repayments."

Finally, Plaintiffs' fraud claim alleges that Wachovia "made

20

false representations with the intent to induce plaintiffs to make monthly mortgage payments to Wachovia." (Doc. 24-2 at 8.) As applied, this claim is also within § 560.2(b)(10) as it is based on, and seeks to impose liability for and regulate, alleged false statements made in connection with the "[p]rocessing, origination [and/or] servicing . . . of, . . . or participation in," a mortgage.

Because Plaintiffs' fraud claim, as applied, bears on lending activities expressly contemplated by § 560.2(b), it is preempted. No further analysis is necessary. Wachovia's motion to dismiss the fraud claim is GRANTED and this claim is DISMISSED.

### b. Conversion Claim

The conversion claim alleges "Wachovia converted the personal property of plaintiffs, in the form of mortgage payments made on a fraudulent and non-existent loan, to its own use or control." (Doc. 24-2 at 8.) This claim, as applied, also fits within § 560.2(b). The alleged wrongful conversion of Plaintiffs' "mortgage payments" made on a "fraudulent loan" is a state law claim that is based on alleged wrongful conduct in the "processing, origination [and/or] servicing" of a mortgage, § 560.2(b)(10), and also concerns "repayment[]," § 560.2(b)(11). Because Plaintiffs' conversion claim, as applied, would regulate lending activities expressly contemplated by § 560.2(b), it is preempted, and no further analysis is necessary.[5] Wachovia's motion to dismiss the conversion claim is

---

[5] Plaintiffs' reliance on *Fenning v. Glenfield*, 40 Cal. App. 4th 1285 (1995) is unpersuasive. *Fenning* is materially distinguishable. *See In re Wash. Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d 1136, 1155 (C.D. Cal. 2008) (noting that *Fenning* involved "claims for fraud related to a bank's sale of uninsured investment securities, not its deposit or lending-related activities").

**GRANTED and this claim is DISMISSED.**[6]

        **c.   Requested Amendment**

      **At the hearing on the motion, Plaintiffs argued that their fraud and conversion claims are not preempted because Wachovia did not, in fact, issue them a loan. Plaintiffs requested leave to amend to clarify that Wachovia did not issue them a loan, and Plaintiffs believe that such an amendment would save their fraud and conversion claims from preemption.**

      **The preceding analysis on preemption is predicated on the understanding that Plaintiffs were, in fact, issued a loan by Wachovia. Numerous allegations in the complaint suggest that Wachovia actually issued them a loan. (*See, e.g.*, Doc. 24-2 at 4 (alleging, among other things, "Wachovia failed to give plaintiffs a complete set of executed documents regarding their refinance loan," "[s]ince the inception of the Wachovia loan, plaintiffs made all monthly payments to Wachovia," and "[b]eginning in December 2008, Wachovia refused to accept plaintiffs' payment on the Wachovia loan.")). In addition, the allegation in the conversion claim that Wachovia "made" a "fraudulent loan" is based on the necessary premise that Wachovia actually made a loan to Plaintiffs. Either a loan was made which was fraudulent or there was no loan at all, but there cannot be both a loan which was fraudulent and no loan at all. The allegation in the conversion claim that the "fraudulent loan" was "non-existent" can be read to mean, as it was here, that Wachovia actually made the loan to Plaintiffs but formalities were**

---

     [6] **Because Plaintiffs' fraud and conversion claims are preempted, there is no need to consider Wachovia's other arguments as to why these claims should be dismissed.**

not followed and there is no definitive documentation that affirms the loan's existence, i.e., the loan does not exist on paper.

Even if Plaintiffs amend their complaint, as requested, to allege that Wachovia never issued a loan to Plaintiffs, it is not clear that this would impact the preemption analysis. One stated purpose for the regulatory preemption provision is to ensure "a uniform federal scheme of regulation" for federal savings associations. 12 C.F.R. § 560.2(a). Under Plaintiffs' analysis, however, in any given situation, the lending activities of federal savings associations would be subject to both federal and state regulations so long as no loan is ultimately issued to the borrower. Nevertheless, supplemental briefing is requested to properly analyze this preemption issue.

On or before February 22, 2010, Wachovia shall file supplemental briefing, not to exceed seven (7) pages, to address whether Plaintiffs' proposed amendment to their fraud and conversion claims is futile because these claims will still be preempted even if Wachovia did not issue a loan to Plaintiffs. Any opposition to Wachovia's supplemental briefing is due by February 26, 2010, and shall not exceed five (5) pages. There is no need for a reply.

C.   <u>Wachovia's Motion To Strike</u>

Wachovia moves to strike the punitive damages allegations with respect to the fraud and conversion claims. Given, however, that these claims are preempted and dismissed, Wachovia's motion to strike is DENIED as moot.

//

//

23

**V.   CONCLUSION**

For the reasons stated:

1.   As to the RESPA claim:

     a.   Carrington's motion to dismiss is GRANTED.   This claim is DISMISSED WITH LEAVE TO AMEND.

     b.   Carrington's motion for a more definite statement is DENIED as moot.

2.   As to the § 2937 "claim":

     a.   Carrington's motion to dismiss is DENIED without prejudice to refiling.

     b.   Carrington's motion for a more definite statement of the § 2937 claim is GRANTED.   Because it is unclear whether Plaintiffs are asserting a private right of action under § 2937, Plaintiffs, if they wish to pursue such a claim, must amend the complaint to clarify whether they are requesting damages or some affirmative remedy for the statutory violation.

3.   As to the declaratory relief claim:

     a.   Carrington's motion to dismiss is GRANTED in part and DENIED in part.   The motion is GRANTED to the extent the complaint requests independent declarations as to past conduct, i.e., whether Plaintiffs are "in default under the provisions of the Deed of Trust" and whether "the Notice of Default and the Notice of Trustee's Sale are defective and invalid."   This portion of the declaratory relief claim is DISMISSED.   The motion is DENIED to the extent the complaint requests a declaration that Carrington has a "right to proceed with the non-judicial foreclosure pursuant to the Notice of Trustee's Sale."

**b.** Carrington's motion for a more definite statement is DENIED as moot.[7]

**4.** As to the fraud and conversion claims:

**a.** Wachovia's motion to dismiss the fraud and conversion claims is GRANTED on the grounds that these claims, as presently pled, are preempted.

**b.** Supplemental briefing is requested, as stated, to address whether Plaintiffs' proposed amendment to the complaint would be futile.

**c.** Wachovia's motion to strike the request for punitive damages is DENIED as moot.

Once the supplemental briefing is received and the preemption issue resolved, an order will issue specifying the due date for any amended complaint and any corresponding responsive pleading.

IT IS SO ORDERED.

Dated: __February 17, 2010__          _____/s/ Oliver W. Wanger_____
                                                UNITED STATES DISTRICT JUDGE

---

[7] **The surviving portion of Plaintiffs' declaratory relief claim is sufficiently clear and does not warrant a more definite statement.**

25