1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT FOR THE

7                     EASTERN DISTRICT OF CALIFORNIA

8

9  MARY AMARAL, et al.,            )        No. CV-F-09-937 OWW/GSA
                                   )
10                                 )        MEMORANDUM DECISION AND
                                   )        ORDER GRANTING PLAINTIFFS'
11              Plaintiffs,        )        REQUEST FOR AMENDMENT TO
                                   )        AVOID HOLA PREEMPTION
12       vs.                       )
                                   )
13                                 )
   WACHOVIA MORTGAGE               )
14 CORPORATION, et al.,            )
                                   )
15                                 )
                Defendants.        )
16                                 )
   _____)
17

18       Plaintiff's Complaint alleged as general allegations that

19 Plaintiffs are the owners of real property located in Lemoore,

20 California, which is their residence, and further alleged:

21              9.  On or about April 27, 2006, plaintiffs
                obtained two loans from Fremont Investment &
22              Loan ....

23              10.  Plaintiffs made all monthly payments to
                Fremont through and including March 2008.

24              11.  In approximately January 2008,
                plaintiffs approached Wachovia to obtain a
25              refinance loan to pay off the First Loan and
                the Second Loan [obtained from Fremont].
26              Plaintiffs' loan officer at Wachovia, Heather

                                   1

Vasquez, told plaintiffs to cease making payments to Fremont on the First or Second Loan for April 2008 or May 2008, while the Wachovia refinance loan was being processed.

12.   On or about April 1, 2008, servicing of the First Loan was taken over by Carrington without notice to plaintiffs and without their knowledge.   Plaintiffs were not given notice of the transfer of servicing ....

13.   On or about April 30, 2008, Wachovia purportedly wired $594,806.14 to Fremont to pay off the First Loan and Second Loan.

14.   Wachovia, through Vasquez and other employees and agents, presented plaintiffs with documentation showing that plaintiffs' refinance loan had been approved, that Fremont had been paid off in full, and that plaintiffs were obligated to repay the refinance loan to Wachovia.   Wachovia gave plaintiffs copies of loan paperwork showing loan numbers ... for their Wachovia refinance loan.   Wachovia failed to give plaintiffs a complete set of executed documents regarding their refinance loan.   Plaintiffs received statements from Wachovia stating their monthly payment was due.

15.   Beginning in June 2008, Vasquez instructed plaintiffs to make monthly payments to Wachovia ... in repayment of the Wachovia refinance loan.   Beginning in June 2008, Wachovia accepted plaintiffs' loan payments.

16.   Since the inception of the Wachovia loan, plaintiffs made all payments to Wachovia ... through and including November 2008.   Wachovia gave plaintiffs receipts showing the payment on their mortgage loan. Beginning in December 2008, Wachovia refused to accept plaintiffs' payments on the Wachovia loan.   Thereafter, Wachovia refused to give plaintiffs any information regarding the loan or their payments.

17.   Plaintiffs are informed and believe and thereon allege that Wachovia negotiated some or all of the payments tendered.

2

18.   On May 13, 2008, Carrington sent to plaintiffs a Notice of Intent to Foreclose on that First Loan stating that monthly payments 'due on and after 3/1/2008 have not been received.' ....

...

20.   In November or December 2008, Wachovia presented plaintiffs with newly created receipts purporting to show that plaintiffs had received cash back from payments made on the Wachovia loan, and/or that payments were deposited in another account held by plaintiffs at the Wachovia bank.  Plaintiffs never received any cash back from any of the monthly payments made on the mortgage loan, and never deposited the money for the mortgage payments into any other Wachovia account.

In the Memorandum Decision and Order filed on February 17, 2010, (Doc. 43; February 17 Memorandum), Plaintiff's causes of action against Defendant Wachovia Mortgage Bank ("Wachovia") for fraud and conversion were dismissed as preempted by the federal Home Owners Loan Act ("HOLA"):

a.   Fraud Claim

As to the fraud claim, Plaintiffs allege Wachovia 'made material false representations to plaintiffs that their refinance loan was approved by Wachovia, that all loan documents had been processed, and that plaintiffs had incurred an obligation to make monthly payments to Wachovia to repay the refinance loan.' (Doc. 24-2 at 8).  This fraud claim concerns lending and revolves around the 'processing, origination [and/or] servicing' of a mortgage.  As applied, this fraud claim is a type of state law contemplated in § 560.2(1)(10) and is preempted.

Plaintiffs' fraud claim also alleges that '[t]here was no documents indicating the Wachovia loan had been processed or approved, or that plaintiffs had any obligation to pay

3

any money to Wachovia.'  (Doc. 24-2 at 8.)
This fraud allegation fits squarely within §
560.2(b)(10), and likely within §
560.2(b)(9), which deals with information in
'credit-related documents,' and §
560.2(b)(11), which deals with 'repayments.'

Finally, Plaintiffs' fraud claim alleges that
Wachovia 'made false representations with the
intent to induce plaintiffs to make monthly
mortgage payments to Wachovia.'  (Doc. 24-2
at 8.)  As applied, this claim is also within
§ 560.2(b)(10) as it is based on, and seeks
to impose liability for and regulate, alleged
false statements made in connection with the
'[p]rocessing, origination [and/or] servicing
... of ... or participation in,' a mortgage.

Because Plaintiffs' fraud claim, as applied,
bears on lending activities expressly
contemplated by § 560.2(b), it is preempted.
No further analysis is necessary.  Wachovia's
motion to dismiss the fraud claim is GRANTED
and this claim is DISMISSED.

b.  <u>Conversion Claim</u>

The conversion claim alleges 'Wachovia
converted the personal property of
plaintiffs, in the form of mortgage payments
made on a fraudulent and non-existent loan,
to its own use or control.'  (Doc. 24-2 at
8.)  This claim, as applied, also fits within
§ 560.2(b).  The alleged wrongful conversion
of Plaintiffs' 'mortgage payments' made on a
'fraudulent loan' is a state law claim that
is based on alleged wrongful conduct in the
'processing, origination [and/or] servicing'
of a mortgage, § 560.2(b)(10), and also
concerns 'repayment[],' § 560.2(b)(11).
Because Plaintiffs' conversion claim, as
applied, would regulate lending activities
expressly contemplated by § 560.2(b), it is
preempted, and no further analysis is
necessary.  Wachovia's motion to dismiss the
conversion claim is GRANTED and this claim is
DISMISSED.

c.  <u>Requested Amendment</u>.

At the hearing on the motion, Plaintiffs

4

argued that their fraud and conversion claims are not preempted because Wachovia did not, in fact, issue them a loan.  Plaintiffs requested leave to amend to clarify that Wachovia did not issue them a loan, and Plaintiffs believe that such an amendment would save their fraud and conversion claims from preemption.

The preceding analysis on preemption is predicated on the understanding that Plaintiffs were, in fact, issued a loan by Wachovia.  Numerous allegations in the complaint suggest that Wachovia actually issued them a loan (*See, e.g.,* Doc. 24-2 at 4 (alleging, among other things, 'Wachovia failed to give plaintiffs a complete set of executed documents regarding their refinance loan,' '[s]ince the inception of the Wachovia loan, plaintiffs made all monthly payments to Wachovia,' and '[b]eginning in December 2008, Wachovia refused to accept plaintiffs' payment on the Wachovia loan.')).  In addition, the allegation in the conversion claim that Wachovia 'made' a 'fraudulent loan' is based on the necessary premise that Wachovia actually made a loan to Plaintiffs. Either a loan was made which was fraudulent or there was no loan at all, but there cannot be both a loan which was fraudulent and no loan at all.  The allegation in the conversion claim that the 'fraudulent loan' was 'non-existent' can be read to mean, as it was here, that Wachovia actually made the loan to Plaintiffs but formalities were not followed and there is no definitive documentation that affirms the loan's existence, i.e., the loan does not exist on paper.

Even if Plaintiffs amend their complaint, as requested, to allege that Wachovia never issued a loan to Plaintiffs, it is not clear that this would impact the preemption analysis.  One stated purpose for the regulatory preemption provision is to ensure 'uniform federal scheme of regulation' for federal savings associations.  12 C.F.R. § 560.2(a).  Under Plaintiffs' analysis, however, in any give situation, the lending activities of federal savings associations

5

1
2
3

    would be subject to both federal and state
regulations so long as no loan is ultimately
issued to the borrower.  Nevertheless,
supplemental briefing is requested to
properly analyze this preemption issue.

4
5
6
7
8
9

    On or before February 22, 2010, Wachovia
shall file supplemental briefing, not to
exceed seven (7) pages, to address whether
Plaintiffs' proposed amendment to their fraud
and conversion claims is futile because these
claims will still be preempted even if
Wachovia did not issue a loan to Plaintiffs.
Any opposition to Wachovia's supplemental
briefing is due by February 26, 2010, and
shall not exceed five (5) pages.  There is no
need for a reply.

10

    ...

11
12
13

    Once the supplemental briefing is received
and the preemption issue resolved, an order
will issue specifying the due date for any
amended complaint and any corresponding
responsive pleading.

14     Wachovia timely filed its supplemental brief, addressing

15 whether HOLA preemption applies even if Wachovia did not issue a

16 loan to Plaintiffs.

17     In their supplemental brief, Plaintiffs abandon their

18 contention made at the hearing that claims for fraud and

19 conversion based on the failure to issue a loan are not preempted

20 by HOLA:

21
22
23
24
25

    At oral argument, counsel for plaintiffs
articulated one possible amendment, i.e.,
that plaintiffs could clarify that a loan was
never made by plaintiffs.  Plaintiffs should
not be limited to the example given at oral
argument, but should be given leave to amend
that complaint in keeping with the Court's
decision on the motion to dismiss.  Wachovia
will have ample opportunity to challenge the
First Amended Complaint once it is filed.

26

Plaintiffs now contend that state law claims of fraud and conversion are not preempted by HOLA "where, as here, the claims do not involve systemic practices."   Plaintiffs assert that they can amend "to clarify that their causes of action based on fraud and conversion implicate only isolated conduct and not the lending practices of Wachovia."   Plaintiff asserts:

> The First Amended Complaint will clarify that plaintiffs seek to recover based on the single, isolated and presumably aberrant incident of their funds being taken by a Wachovia employee in the guise of extending a 'mortgage loan.'  The only argument Wachovia can advance to defeat plaintiffs' proposed amendments is to contend that Heather Vasquez and any other offending agents of Wachovia <u>were acting pursuant to Wachovia's policies and procedures</u> when they absconded with plaintiffs' money while fraudulently leading plaintiffs to believe they had obtained a mortgage loan.  Only under those circumstances would plaintiff's [sic] attempts to address this isolated incident of fraud impede the 'lending activities' of Wachovia.

The issue is whether leave to amend should be denied on the ground of futility.  Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.  *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991).  Leave to amend may be denied based upon futility alone*. Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995).  A claim is considered futile and leave to amend shall not be given if there is no set of facts that can be proved under the amendment that would constitute a valid claim.  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).  However, denial on this ground is rare and

7

courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed. *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D.Cal.2003), citing *Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial* at 8:422 (The Rutter Group, 2002).

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 559 (9th Cir.2002), *cert. denied*, 538 U.S. 1069 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir.1979), *aff'd*, 445 U.S. 921 (1980). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America, id.*, 309 F.3d at 559.

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008); 12 U.S.C. § 1464. OTS promulgated 12 C.F.R. § 560.2

1   as a preemption regulation, which "'has no less preemptive effect

2   than federal statutes.'" *Silvas, id.,* 514 F.3d at 1005.

3       Section 560.2(a) provides:

4           OTS is authorized to promulgate regulations
            that preempt state laws affecting the
5           operations of federal savings associations
            when deemed appropriate to facilitate the
6           safe and sound operation of federal savings
            associations, to enable federal savings
7           associations to conduct their operations in
            accordance with the best practices of thrift
8           institutions in the United States, or to
            further other purposes of the HOLA.  To
9           enhance safety and soundness and to enable
            federal savings associations to conduct their
10          operations in accordance with best practices
            (by efficiently delivering low-cost credit to
11          the public free from undue regulatory
            duplication and burden), OTS hereby occupies
12          the entire field of lending regulation for
            federal savings associations.  OTS intends to
13          give federal savings associations maximum
            flexibility to exercise their lending powers
14          in accordance with a uniform federal scheme
            of regulation.  Accordingly, federal savings
15          associations may extend credit as authorized
            under federal law, including this part,
16          without regard to state laws purporting to
            regulate or otherwise affect their credit
17          activities, except to the extent provided in
            paragraph (c) or § 560.10 of this part.  For
18          purposes of this section, 'state law'
            includes any state statute, regulation,
19          ruling, order, or judicial decision.[1]

20  Section 560.2(b) provides:

21          Except as provided in § 560.110 of this part,
            the types of state laws preempted by
22          paragraph (a) of this section include,
            without limitation, state laws purporting to
23          impose requirements regarding:

24          ...

25  _____

26      [1]12 C.F.R. § 560.110 pertains to "most favored lender usury
    preemption" and has no apparent relevance to this action.

**(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;**

**(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;**

**(6) Escrow accounts, impound accounts, and similar accounts;**

...

**(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;**

**(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages**

....

**Section 560.2(c) provides:**

**State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:**

10

1          ...

2                    **(4) Tort law**

3          ....

4      As noted by the Ninth Circuit in *Silvas*, 514 F.3d at 1005,

5  OTS has outlined a proper analysis in evaluating whether a state

6  law is preempted under Section 560.2:

7                    When analyzing the status of state laws under
                     § 560.2, the first step will be to determine
8                    whether the type of law in question is listed
                     in paragraph (b).  If so, the analysis will
9                    end there; the law is preempted.  If the law
                     is not covered by paragraph (b), the next
10                   question is whether the law affects lending.
                     If it does, then, in accordance with
11                   paragraph (a), the presumption arises that
                     the law is preempted.  This presumption can
12                   be reversed only if the law can clearly be
                     shown to fit within the confines of paragraph
13                   (c).  For these purposes, paragraph (c) is
                     intended to be interpreted narrowly.  Any
14                   doubt should be resolved in favor of
                     preemption.

15
   OTS, Final Rule, 61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996).
16
       In *Silvas, supra*, 514 F.3d 1001, mortgage applicants filed a
17
   putative class action in state court alleging that a federal
18
   savings and loan association's policy not to refund lock-in fees
19
   after applicants cancelled the transaction within the three-day
20
   window provided by TILA violated California's Unfair Competition
21
   Law.  The Ninth Circuit ruled:
22
                     I *UCL § 17500: Unfair Advertising*
23
                     As outlined by OTS, the first step is to
24                   determine if UCL § 17500, as applied, is a
                     type of state law contemplated in the list
25                   under paragraph (b) of 12 C.F.R. § 560.2.  If
                     it is, the presumption analysis ends.  Here,
26                   Appellants allege that E*TRADE violated UCL §

                                   11

17500 by including false information on its
website and in every media advertisement to
the California public.  Because this claim is
entirely based on E*TRADE's *disclosures and
advertising*, it falls within the specific
type of law listed in § 560.2(b)(9).
Therefore, the presumption analysis ends.
UCL § 17055 as applied in this case is
preempted by federal law.

II *UCL § 17200: Unfair Competition*

Again, the first step is to determine if UCL
§ 17200, as applied, is a type of state law
contemplated in the list under paragraph (b)
of 12 C.F.R. § 560.2.  Appellants allege
E*TRADE's practice of misrepresenting
consumer's legal rights in advertisements and
other documents is contrary to the policy of
California and thus violates UCL § 17200.
This claim, similar to the claim under §
17500, fits within § 560.2(b)(9) because the
alleged misrepresentation is contained in
advertising and disclosure documents.

In addition, Appellants' claim under UCL §
17200 alleges that the lock-in fee itself is
unlawful.  That allegation triggers a
separate section of paragraph (b).  Section
560.2(b)(5) specifically preempts state laws
purporting to impose requirements on loan
related fees.  *See Jones v. E*Trade Mortgage
Co.*, 397 F.3d 810, 813 (9th Cir.2005)(finding
E*TRADE's lock-in fee is not a separate
transaction, but a loan related fee).
Because the UCL § 17200 claim, as applied, is
a type of state law listed in paragraph (b) -
in two separate sections - the preemption
analysis ends there.  Appellants' claim under
UCL § 17200 is preempted.

514 F.3d at 1006.  The Ninth Circuit then addressed the

incidental affect analysis under Section 560.2(c):

Section 560.2(c) provides that state laws of
general applicability only incidentally
affecting federal savings associations are
not preempted.  Appellants argue that both of
their state law claims fit under §
560.2(c)(1) and (4) because they are founded

on California contract, commercial, and tort law, merely enforcing the private right of action under TILA.  They further contend that their claims use a predicate legal duty supplied by TILA, and therefore only have an incidental affect on lending.

We do not reach the question of whether the law fits within the confines of paragraph (c) because Appellants' claims are based on types of laws listed in paragraph (b) of § 560.2, specifically (b)(9) and (b)(5).[3]

[3]If we did reach the issue, we would reach the same result.  When federal law preempts a field, it leaves 'no room for the States to supplement it.' ... When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law ... An integral part of any regulatory scheme is the remedy available against those who violate the regulations ....

In this case, it is clear that the UCL has a much longer statute of limitations than does TILA ... It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred.

An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law.

*Id.* at 1006-1007.

Plaintiffs argue that *Fenning v. Glenfed, Inc.*, 40 Cal.App.4th 1285 (1995) is "almost directly on point."  In the February 17 Memorandum, holding that Plaintiffs' conversion claim, which alleged that "Wachovia converted the personal property of plaintiffs, in the form of mortgage payments made on a fraudulent and non-existent loan, to its own use and control,"

13

1    was preempted by HOLA, the Court noted:

2           [5] Plaintiffs' reliance on *Fenning v.*
            *Glenfield* [sic]*,* 40 Cal.App.4th 1285 (1995)
3           is unpersuasive.   *Fenning* is materially
            distinguishable.   *See In re Wash. Mut.*
4           *Overdraft Prot. Litig.*, 539 F.Supp.2d 1136,
            1155 (C.D.Cal.2008) (noting that *Fenning*
5           involved 'claims for fraud related to a
            bank's sale of uninsured investment
6           securities, not its deposit or lending-
            related activities').
7
     Plaintiffs contend that the Court's ruling is incorrect:
8
            As *Fenning* states: 'Plaintiff sued both the
9           Bank, a federal savings association, and
            three affiliated companies, none of which is
10          a federal savings association.   Consequently,
            we must make independent determinations of
11          whether Congress intended to preempt
            plaintiff's claims against the Bank and the
12          other defendants.   We begin with a discussion
            of Glenfed Brokerage, the service corporation
13          wholly owned by the Bank.   *Fenning*, *supra*, 40
            Cal.App.4th at 1292-1293.   The analysis cited
14          by plaintiffs begins under the 'Claims
            Against the Bank' section of *Fenning*, which
15          begins at page 1296.

16       In *Fenning*, a class action was brought against Glendale

17   Federal Bank, its former and current parent companies, and its

18   securities brokerage subsidiary.   The complaint alleged that

19   Plaintiff walked into a branch of the Bank where he maintained a

20   checking account, seeking to reinvest the proceeds of a

21   certificate of deposit from his pension and employee benefit

22   plans.   After explaining his investment objectives to the

23   "investment consultant" whom he believed to be a Bank employee,

24   the plaintiff was persuaded to invest his money in two mutual

25   funds, neither of which was FDIC insured.   The Plaintiff first

26   learned that his investment was not with the Bank, and not FDIC

                                   14

insured, when he received his first quarterly statement, which

reported an investment loss.  Plaintiff filed his class action,

alleging causes of action for unfair and deceptive business

practices in violation of the California Business and Professions

Code, fraud, and negligent misrepresentation.  The gravamen of

the class action complaint was that the advertising and sales

practices of Glenfed Brokerage purposefully deceive customers by

blurring the distinction between the Bank, whose investments are

safe and FDIC insured, and Glenfed Brokerage, which sells

uninsured investments subject to substantial risks of loss, in

order to induce customers to purchase investment products from

Glenfed Brokerage.  Plaintiff maintained that these advertising

and sales practices were unfair and deceptive, in direct

violation of federal regulations applicable to service

corporations such as Glenfed Brokerage, and that the Bank is

separately liable for this conduct because, by means of the

improper and misleading use of the Bank's personnel, logo, and

facilities, the Bank actively engaged in consumer fraud.  The

Defendants demurred to the Complaint on the ground of HOLA

preemption.  The trial court granted the demurrer and the Court

of Appeals reversed.  As to the Bank, the Court of Appeals ruled:

> ... The question with which we are faced here
> ... is whether plaintiff's lawsuit for fraud,
> negligent misrepresentation (which is, of
> course, a species of fraud), and unfair and
> deceptive business practices in effect
> regulates the 'operations' of a savings
> association.  We conclude that it does not.
>
> Plaintiff's complaint alleges that the Bank,

15

1         in soliciting the sale of securities, engaged
       in deceptive advertising practices,
2         intentionally or negligently made material
       misrepresentations and omissions, and engaged
3         in other misleading and deceptive acts,
       causing plaintiff and the class to 'believ[e]
4         that the GlenFed Brokerage employees they
       were dealing with were Glenfed Bank employees
5         and that the mutual funds or other securities
       purchased had substantially the same safety
6         features as a federally insured Certificate
       of Deposit.'  Plaintiff further alleged that
7         he and the class were misled by the Bank's
       deceptive advertising and reasonably relied
8         on the Bank's misrepresentations and
       omissions, all to their detriment.
9
       ... [A]ctions for fraud are governed almost
10        exclusively by state law, and do not raise
       issues of great federal interest ... There is
11        no reason to suppose that Congress intended
       to preempt common law tort claims,
12        effectively granting savings associations
       immunity from such state law claims, and a
13        number of courts have so held ... And the
       Bank's argument that, by permitting fraud and
14        unfair trade practices suits, the state is
       regulating the Bank's conduct, is off the
15        mark.  Plaintiff's ability to sue the Bank
       for fraud does not interfere with what the
16        Bank may do, that is, how it may conduct its
       operations; it simply insists that the Bank
17        cannot misrepresent how it operates, or
       employ fraudulent methods in its operations.
18        Put another way, the state cannot dictate to
       the Bank how it can or cannot operate, but it
19        can insist that, however the Bank chooses to
       operate, it do so free from fraud and other
20        deceptive practices.

21  **40 Cal.App.4th at 1298-1299.**

22       However, as noted in *Silvas v. E*Trade Mortg. Corp.,* 421

23  F.Supp.2d 1315, 1320 n.3 (S.D.Cal.2006), *aff'd*, 514 F.3d 1001

24  (9th Cir.2008), *Fenning* predated the issuance by the Office of

25  Thrift Supervision of 12 C.F.R. § 560.2.  Moreover, *Fenning* does

26  not hold or even suggest that an allegation that a "single,

1  isolated and presumably aberrant incident of their funds being

2  taken by a Wachovia employee in the guise of extending a

3  'mortgage loan'" would not be preempted by HOLA.  Finally,

4  California state court decisions interpreting federal preemption

5  law are not binding on a federal court.  *Id.* at 1321 n.4.

6      Plaintiffs appear to contend that Wachovia employees did not

7  transfer money to Fremont to pay off Plaintiffs' loans and that

8  Wachovia employees stole the payments made to Wachovia by

9  Plaintiffs, who believed that their loans to Fremont had been

10 paid by Wachovia as part of the ostensible refinancing.  In other

11 words, those Wachovia employees defrauded not only Plaintiffs but

12 Wachovia itself.  Plaintiffs have not named those Wachovia

13 employees as defendants in this action.

14      Plaintiffs cite *Lopez v. Washington Mutual Bank*, 284 F.3d

15 990 (9th Cir.2002) as authority that the proposed amendment will

16 not be preempted by HOLA.  However, the cited opinion was

17 withdrawn and superseded by *Lopez v. Washington Mutual Bank,* 302

18 F.3d 900 (9th Cir.2002), and amended on denial of rehearing *en*

19 *banc* by *Lopez v. Washington Mutual Bank*, 311 F.3d 928 (9th

20 Cir.2002).[2]

21      In *Lopez*, the plaintiffs claimed that the Bank's practice of

22 using directly deposited Social Security and SSI benefits to set

23 off overdrafts and overdraft fees constituted common law

24 conversion.  In the initial *Lopez* opinion, the panel ruled that

25 _____

26     [2]The amendment on denial of rehearing *en banc* is not germane
to the issue before the Court.

plaintiffs' claim for conversion only incidentally affected

deposit-related activities:

> It is the federal law, Section 407(a), that
> has the primary effect on the bank's
> practices; these state law claims merely
> piggy-back on the federal violation and
> provide additional state remedies.

*See Lopez,* 284 F.3d at 998.  Plaintiffs contend that "[o]n

rehearing *en banc*, the court did not reach a conclusion as to

whether the conversion cause of action was precluded by

preemption," thereby "leaving its prior opinion regarding state

law preemption undisturbed."

Plaintiffs cite no authority for this contention.  Review of

the Ninth Circuit's docket in *Lopez* shows that the Ninth Circuit

panel which issued the initial *Lopez* opinion granted a petition

for rehearing, not a petition for rehearing *en banc,* and withdrew

the initial opinion.  (See Ninth Circuit Docket No. 01-15303,

Entry 84).[3]  In the *Lopez* opinion cited at 302 F.3d 900,  the

Ninth Circuit held that it need not reach the question of

preemption of the state law conversion claim because the District

Court had recognized an alternative ground for dismissal of that

claim, i.e., that plaintiffs had not shown a conversion of

plaintiffs' property by a wrongful act.  302 F.3d at 907.

Because the initial *Lopez* opinion was withdrawn by the panel, it

---

[3]A Court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system via the internet.  *See* Fed. R. Evid. Rule 201(b); *United States v. Howard*, 381 F.3d 873, 876, fn.1 (9th Cir. 2004).

1   has no precedential effect and cannot be relied upon by

2   Plaintiffs or this Court.

3        Plaintiffs also cite *Lopez v. World Savings & Loan Assn.,*

4   105 Cal.App.4th 729, 742 (2005). In *Lopez*, a homeowner brought an

5   action against World, alleging that World have charged a fee for

6   the transmission of a payoff demand by fax in excess of the fee

7   authorized by California Civil Code § 2943(e)(6) for furnishing

8   such a statement.  The trial court dismissed the plaintiff's

9   claims as preempted and the Court of Appeals affirmed.  In the

10  portion of the opinion cited by Plaintiffs here, the Court of

11  Appeals, referring to *Gibson v. World Savings and Loan Assn.,* 103

12  Cal.App.4th 1291 (2003), which held that 12 C.F.R. § 560.2 does

13  not preempt a class action under the UCL alleging that World

14  charges borrowers more for replacement hazard insurance than

15  authorized by the terms of the governing deeds of trust, and that

16  World fraudulently misrepresents the cost of replacement

17  insurance, stated:

18              We agree fully with the court there that 'the
                duties of a contracting party to comply with
19              its contractual obligations and to act
                reasonably to mitigate its damages in the
20              event of a breach by the other party, ... not
                to misrepresent material facts, and ... to
21              refrain from unfair or deceptive business
                practices' (*Gibson*, at p. 1301), upon which
22              the claims in that case were based, 'are not
                requirements or prohibitions of the sort that
23              [part] 560.2 preempts (*id.* at p. 1302).  As
                the court explained, these duties are not
24              directed towards federal savings
                associations, but to 'anyone engaged in any
25              business and anyone contracting with anyone
                else,' so that 'they do not purport to
26              regulate federal savings associations and are

                              19

> not specifically directed towards them ...
> Any effect they have on the lending
> activities of a federal savings association
> is incidental rather than material.

Plaintiffs also cite *McKell v. Washington Mutual, Inc.*, 142
Cal.App.4th 1457, 1485 (2006).

However, in *Munoz v. Financial Freedom Senior Funding Corp.*,
567 F.Supp.2d 1156, 1162-1163 (C.D.Cal.2008), the plaintiff
relied on *Fenning, Gibson*, and *McKell*, in arguing that state laws
of general applicability are not preempted by HOLA.  The District
Court, citing the Ninth Circuit's decision in *Silvas*, ruled:

> The Ninth Circuit drew no distinction between
> a law of general applicability and one
> specifically designed to regulate savings
> associations.  Thus, state court decisions
> cited by Ms. Munoz, to the extent they hold a
> law of general applicability cannot be
> preempted by HOLA, are in conflict with this
> recent decision of the Ninth Circuit.

Plaintiffs cite *Burns International, Inc. v. Western Savings
and Loan Association*, 978 F.2d 533 (9th Cir.1992).  In *Burns*,
borrowers filed an action against Western and its officers,
alleging fraud and negligent misrepresentation in connection with
negotiating a line of credit.  The action was dismissed for lack
of subject matter jurisdiction.  The Ninth Circuit addressed
"whether an action for fraud and negligent misrepresentation may
be brought against an officer of a savings and loan association
under federal common law" and ruled that "there is no paramount
federal interest that compels the recognition of a federal common
law cause of action against an individual officer in a case where
a borrower from a federal savings and loan association alleges

that a loan agreement was induced by means of a fraudulent representation." *Id.* at 534.   Plaintiff argued to the Ninth Circuit that "the regulation of federal savings and loan associations ... under 12 U.S.C. § 1464 is a uniquely federal interest, demanding recognition of federal common law causes of action for fraud and negligent misrepresentation against executives, officers, and directors of such institutions." *Id.* at 535.   The Ninth Circuit, following *Taylor v. Citizens Fed. Sav. & Loan Assn.*, 846 F.2d 1320 (11th Cir.1988), which held that a private cause of action cannot be maintained by a borrower against a S & L for alleged violations by the S & L of HOLA, agreed that "the creation of new federal common law causes of action is unnecessary for allegations of fraudulent misrepresentations in connection with a bank loan because the remedy under state law is adequate." *Id.* at 536.   The Ninth Circuit concluded:

> Contrary to the Burnses' contentions, a cause of action alleging that a loan agreement was obtained by means of a fraudulent representation does not implicate the internal affairs of an S & L.  The Burnses have failed to demonstrate that state law is inadequate to resolve their pending action against the Drigges in the Arizona courts involving the same claims.

*Id.* at 537.

   *Burns* is not determinative because the decision did not involve HOLA preemption; rather, it involved subject matter jurisdiction based on an alleged violation of HOLA by a defendant.   Whether Plaintiffs' proposed amendment will be

21

preempted by HOLA is a defense to Plaintiffs' claims. *See Fidelity Federal Savings & Loan Assn. v. de la Cuesta*, 458 U.S. 141 (1982).

Plaintiffs also cite *In re Ocwen Loan Servicing LLC Mortgage Servicing Litigation*, 491 F.3d 638 (7th Cir.2007).  In *Ocwen*, borrowers brought a putative class action under the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, the Truth in Lending Act, and state law claiming that excessive service charges were assessed in connection with mortgage foreclosures.  The District Court denied defendant's motion to dismiss the pendent state law claims as preempted by HOLA.  In affirming the District Court, the Seventh Circuit, noting that although the OTS has some prosecutorial and adjudicatory powers, it has no power to adjudicate disputes between the S & L and their customers and cannot provide a remedy to persons injured by the wrongful acts of S & L's.  Citing *Burns*, the Seventh Circuit noted that HOLA creates no private right of action to sue to enforce the statute or the HOLA regulations.  *Id.* at 643.  The Seventh Circuit ruled:

> Against this backdrop of limited remedial authority, we read subsection (c) [of 12 C.F.R. § 560.2] to mean that OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law type remedies. Suppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings.  It would

be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract.  Or if the mortgage (or a servicer like Ocwen) fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud ... Enforcement of state law in either of the mortgage-servicing examples above would complement rather than substitute for the federal regulatory scheme.

This is well explained in 'Preemption of State Laws Applicable to Credit Card Transactions' ¶ 11C (Opinion of OTS Chief Counsel, Dec. 24, 1996, 1996 WL 767462):

State laws prohibiting deceptive acts and practices in the course of commerce are not included in the list of preempted laws in § 560.2(b) .... The [Indiana] DAP [deceptive acts and practices] statute prohibits specified acts and representations in all consumer transactions without regard to whether the transaction involves an extension of credit.  Although not directly aimed at lenders, this law affects lending to the extent that it prohibits misleading statements and practices in loan transactions by a federal savings association. Accordingly, .... a presumption arises that the DAP statute would be preempted in connection with loans made by the Association.

The OTS has indicated, however, that it does not intend to preempt state laws that establish the basic norms that undergird commercial transactions .... The Indiana DAP falls within the category of traditional 'contract and commercial' law under § 560.2(c)(1).  While the DAP may affect lending relationships, the impact on lending appears to be only incidental to the primary

purpose of the statute - the
regulation of the ethical practices
of all businesses engaged in
commerce in Indiana.  There is no
indication that the law is aimed at
any state objective in conflict
with the safe and sound regulation
of federal savings associations,
the best practices of thrift
institutions in the United States,
or any other federal objective
identified in § 560.2(a).  In fact,
because federal thrifts are
presumed to interact with their
borrowers in a truthful manner,
Indiana's general prohibition on
deception should have no measurable
impact on their lending operations.
Accordingly, we conclude that the
Indiana DAP is not preempted by
federal law.

However, *Fultz v. World Savings & Loan Assn.,* 571 F.Supp.2d 1195, 1198 (W.D.Wash.2008) notes *Ocwen* did not discuss or cite the 1999 OTS opinion that if the California Unfair Competition Act imposes requirements related to loan disclosures and fees, it "'(1) has more than an incidental effect on a federal thrift's lending operations and (ii) is inconsistent with the purposes of § 560.2(a).'" Because of this lapse, the *Fultz* court did not find the *Ocwen* decision "particularly persuasive."  *Id.* at 1198 n.4. Moreover, this Court is bound by the Ninth Circuit's opinion in *Silvas* and must follow the analytical framework adopted in *Silvas.*

Although case authority does not appear to support Plaintiffs' contention that a single, isolated instance of a fraudulent loan will avoid HOLA preemption on that ground alone, it cannot be concluded at this juncture that the proposed

24

1  amendment is futile as a matter of law and because leave to amend
2  should be freely granted and leave to amend is without prejudice
3  to a motion to dismiss, Plaintiffs' request for leave to amend
4  the fraud and conversion causes of action against Defendant
5  Wachovia is GRANTED.

6      Plaintiffs' shall file a First Amended Complaint in
7  accordance with the rulings made in the February 17 Memorandum
8  and this Order within twenty (20) days following the filing date
9  of this Order.  Defendants' response shall be filed within twenty
10 (20) days thereafter.

11

12 IT IS SO ORDERED.

13

14 DATED:  July 2, 2010.

15                          ___/s/ Oliver W. Wanger____
                                OLIVER W. WANGER
16                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

25